UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| In re: Bruce Eugene Scott and<br>Carol Jean Scott, | Bankr. No. 09-37597<br>Adv. No. 10-3021 |
| Debtors. | |
| Vermillion State Bank, | Civil No. 11-229 (PAM/AJB) |
| Appellee, | |
| v. | **MEMORANDUM AND ORDER** |
| Bruce Eugene Scott, | |
| Appellant. | |

This matter is before the Court on an appeal from an Order of Judge Dennis D. O'Brien of the United States Bankruptcy Court that granted judgment in favor of Appellee Vermillion State Bank in its adversary case against Appellant Bruce Scott. For the reasons that follow, the Bankruptcy Court's Order is affirmed.

**BACKGROUND**

Bruce and Carol Scott commenced a Chapter 7 bankruptcy proceeding in the United States Bankruptcy Court for the District of Minnesota on October 28, 2009. Vermillion State Bank subsequently filed an adversary proceeding against Appellant, alleging that the debt Appllant owed to the Bank was nondischargeable under 11 U.S.C. § 523(a)(2)(B), because Scott used a false financial statement in obtaining a loan from the Bank. A hearing was held on October 18, 2010, and the Bankruptcy Judge rendered his decision on December 20, 2010.

Appellant is a licensed attorney, real estate broker, and insurance agent. At the time the relevant events occurred, Appellant had been a licensed real estate broker and insurance

agent for approximately 30 years, and has been a licensed attorney in Minnesota since 2002. Further, Appellant received a Master's degree in Business Administration from Mankato State University in 1998.

The factual background of this adversary proceeding has its roots in a $1,300,000 loan given by Vermillion State Bank to a company, Midwest Oil of Minnesota, LLC, in 2005. Midwest Oil sought this loan for the purpose of operating a convenience store and gas station in Oakdale, Minnesota. Appellant alleges that this loan did not mature until November 15, 2008, but the record indicates that the actual maturity date was March 15, 2007.[1]

The loan was not paid off when it matured. Further, Midwest Oil owed back real estate taxes and had not yet opened the store. Thus, the Bank sent a letter dated August 2, 2007, in which the Bank notified Midwest Oil of its default status and demanded payment in full by September 3, 2007. On September 7, 2007, Appellant, who was on the board of directors of Midwest Oil's parent corporation, Dr. Rama C. Samanta Roy Institute for Science and Technology, Inc., executed additional collateral on the loan, then worth $1,360,622, in exchange for an extension through October 15, 2007. This collateral was in the form of a personal guaranty and a mortgage on a property he owned. Appellant represented in a financial statement that the property he posted as collateral was worth

---

[1] Indeed, much of Appellant's "Statement of the Facts" section in his brief contains factual assertions that are unsupported by the record. For example, Appellant claims that the disputed loan's amount was $2,400,000, however, the only record evidence shows that the loan was for $1,300,000. Unsupported factual assertions may not be considered by the Court. See Granite Reinsurance Co. v. Acceptance Ins. Cos. (In re Acceptance Ins. Cos.), 567 F.3d 369, 376 (8th Cir. 2009) ("We may affirm the bankruptcy court on any ground supported by the record.").

$530,000, and further represented that he had no current personal liabilities and $2,000 in a bank account.

In fact, Appellant's property was worth substantially less than $530,000; indeed, in the debtor's bankruptcy schedules in October 2009, the property was listed at a value of $152,500. Additionally, Appellant had incurred more than $116,000 in student loans that he failed to disclose to the bank, as well as some credit card debt.

**DISCUSSION**

This Court reviews the Bankruptcy Court's legal determinations de novo, and its factual findings for clear error. Granite Reinsurance Co., 567 F.3d at 376. "Whether a requisite claim under [11 U.S.C. § 523(a)(2)] has been satisfied is a factual determination, which [the Court] review[s] for clear error." In re Freier, 604 F.3d 583, 587 (8th Cir. 2010). "A finding is clearly erroneous if, after reviewing the entire evidence, [the Court is] 'left with the definite and firm conviction that a mistake has been committed.'" Id. (quoting Anderson v. Bessemer City, 470 U.S. 564, 573 (1985)).

As noted above, the Bankruptcy Judge held that Appellant's loan was nondischargeable under 11 U.S.C. § 523(a)(2)(B). That provision states that a debt is nondischargeable if

> money, property, services, or an extension, renewal, or refinancing of credit, [is] obtained by . . . use of a statement in writing (i) that is materially false; (ii) respecting the debtor's or an insider's financial condition; (iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and (iv) that the debtor caused to be made or published with intent to deceive . . . .

11 U.S.C. § 523(a)(2)(B).

Appellant advances three arguments against such a holding in his appeal: (1) that the Bank did not reasonably rely on Appellant's financial statement; (2) that the Appellant did not submit the financial statement with the intent to deceive; and (3) that the Bankruptcy Court demonstrated prejudice against Appellant. These arguments will be addressed in turn.

**A.    Reasonable Reliance**

Appellant first challenges the Bankruptcy Court's finding that the Bank satisfied the third prong of the statutory test, namely, that the Bank reasonably relied on Appellant's financial statement. Because "determinations regarding lack of reasonable reliance are findings of fact," First Nat'l Bank of Olathe, Kan. v. Pontow, 111 F.3d 604, 609 (8th Cir. 1997), the Bankruptcy Court's finding is reviewed for clear error.

Appellant begins by stating that he valued the land that he posted as collateral at $530,000, because he was "valuating the land as development land [instead of agricultural land]." (App.'s Br. at 17.) Because the Bank independently valued the land as bare agricultural land, thus obtaining its true value, Appellant argues that the Bank never relied on his statement at all, and certainly could not have reasonably relied on it. Appellant further argues that the Bank's assumption that Appellant's business would generate cash was not reasonable because the Bank never asked Appellant for his income or tax records. Finally, Appellant argues that the Bank's reliance on his credentials in the real estate, legal, and insurance fields was misplaced and objectively unreasonable.

As much as Appellant would like the Court to discount his own experience in the

4

fields of real estate and finance, it was not clearly erroneous for the Bankruptcy Judge to find that the Bank was reasonable in relying on such experience. First, Appellant has been licensed as a real estate and insurance agent for several decades, and has since added several years of experience as an attorney. Second, Appellant has received a graduate education in business, and thus is unquestionably well-versed in transactions of this sort. Further, as the Bank points out, this was not the case of Appellant applying for a brand-new loan with extensive terms. Rather, this was a case of Appellant posting collateral for a short-term extension of an existing loan from September 7, 2007, to October 15, 2007. Because the Bank knew of Appellant's aforementioned experience and because of the limited duration of the transaction, the Bankruptcy Judge did not commit clear error by holding that the Bank reasonably relied on Appellant's financial statement.

Additionally, Appellant's focus on the two different valuations (his and the Bank's) of the land he purported to post as collateral is unavailing. His financial statement, when taken as a whole, both contained erroneous information and omitted pertinent personal financial facts. First, as noted above, the Bankruptcy Judge did not err by finding that the Bank reasonably relied on Appellant's valuation of the land given his experience in the field. Indeed, although Appellant indicates at one point that the Bank had already determined the land's actual value by the time Appellant provided his valuation, the record clearly shows that the Bank relied on Appellant's valuation because of his experience and because "it [was] pretty easy to determine valuation." (Tr. at 25.) Second, even if this Court were to hold that the Bank could not have reasonably relied on Appellant's valuation of the land, Appellant

5

has failed to demonstrate why the Bank was not entitled to rely on his financial statement that omitted his $116,000 student loan debt as well as his credit card debt. The Court is not "'left with the definite and firm conviction that a mistake has been committed,'" In re Freier, 604 F.3d at 587 (quoting Anderson, 470 U.S. at 573), and thus holds that the Bankruptcy Judge did not commit clear error on this issue.

**B.     Intent to Deceive**

Appellant next argues that the Bankruptcy Judge committed clear error by holding that Appellant satisfied the fourth prong of the statutory analysis, namely, that he intended to deceive the Bank with his inaccurate financial statement. Again, Appellant spends most of his effort arguing that his valuation of the land that he posted as collateral was not intended to deceive and, in fact, was not even false if one considers that Appellant valued the land as development property.

As the Bankruptcy Judge pointed out, Appellant's argument is belied by the fact that Appellant tried to sell the land in 2006 for a sum of $525,000, and received no offer. Thus, as the Bankruptcy Judge reasonably concluded, regardless of how Appellant classified his land, it was not worth the $530,000 he claimed in his financial statement. Further, Appellant does not address the remainder of the issues with his financial statement. The Bankruptcy Judge found that Appellant's purported explanation regarding the omission of his credit card and student loan debts was unconvincing and incredible. The Court holds that the Bankruptcy Judge did not commit clear error with regard to any of his findings on this issue.

**C.     Prejudice**

Finally, Appellant argues that the Bankruptcy Judge exhibited unfair prejudice in his opinion and thus that Appellant is entitled to relief from the decision. Appellant specifically takes umbrage with the Bankruptcy Judge's statement that "[w]e don't need to know what motivated [Appellant]," and the corresponding footnote which describes Appellant's involvement with three bankruptcy proceedings as an attorney for Midwest Oil and Dr. Rama C. Samanta Roy Institute for Science and Technology. (Op. at 4 & n.4.)

Proper context for the Bankruptcy Judge's statements is in order. The Judge was analyzing Appellant's argument that he had no reason to mislead the Bank because he had no financial interest in either Midwest Oil or the Dr. Rama C. Samanta Roy Institute for Science and Technology. The Judge's above-mentioned statement was made in conjunction with the finding that Appellant was "an experienced real estate broker, lawyer, and insurance agent" and that he "did not stumble into this transaction." (Id. at 4.) Having made such a finding, the Judge was entitled to note that Appellant's motivation did not matter; indeed, so long as Appellant's actions fulfilled the four-part statutory test, the disputed loan was nondischargeable. Nothing in the Judge's statement or analysis indicates that he was prejudiced against or harbored some latent animus towards Appellant. This argument is wholly meritless.

**CONCLUSION**

The Bankruptcy Judge did not commit clear error in any of his factual findings, and the Court's de novo review of the Judge's legal determinations has likewise yielded no infirmity.  Accordingly, **IT IS HEREBY ORDERED that** the Order for Judgment of the United States Bankruptcy Court for the District of Minnesota is **AFFIRMED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: Monday, March 28, 2011

*s/ Paul A. Magnuson*
Paul A. Magnuson
United States District Court Judge